# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CR–20–207

| | |
|---|---|
| JOSEPH EVAN BENNION<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered June 2, 2021<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CR-16-1944]<br><br>HONORABLE ROBIN F. GREEN, JUDGE<br><br>REBRIEFING ORDERED; MOTION TO WITHDRAW DENIED WITHOUT PREJUDICE |

## KENNETH S. HIXSON, Judge

Appellant Joseph Bennion appeals after the Benton County Circuit Court revoked his probation on the charges of possession of drug paraphernalia and two counts of failure to appear and imposed an aggregate sentence of 312 months' imprisonment in the Arkansas Department of Correction. Appellant's counsel has filed a no-merit brief and a motion to withdraw as counsel pursuant to Arkansas Supreme Court Rule 4–3(k) (2019)[1] and *Anders v. California*, 386 U.S. 738 (1967), asserting that this appeal is wholly without merit. The motion is accompanied by an abstract and addendum of the proceedings below, alleged to include all objections and motions decided adversely to appellant, and a brief in which

---

[1]We note that Rule 4–3 was amended January 17, 2020. *See In re Rules for Acceptance of Records on Appeal in Electronic Format*, 2020 Ark. 421 (per curiam). However, because counsel's brief before us was filed in this court on August 17, 2020, the previous version was still in effect.

counsel explains why there is nothing in the record that would support an appeal. The clerk of this court mailed a copy of counsel's motion and brief to appellant's last-known address informing him of his right to file pro se points for reversal, which he has done. Consequently, the attorney general has filed a brief in response. However, because counsel's no-merit brief is not in compliance with *Anders* and Rule 4–3(k), we order rebriefing and deny counsel's motion to withdraw without prejudice.

Pertinent to this appeal, appellant was charged by amended information with possession of drug paraphernalia, a Class D felony, in violation of Arkansas Code Annotated section 5-64-443(a)(2) (Supp. 2019) and two counts of failure to appear, a Class C felony, in violation of Arkansas Code Annotated section 5-54-120(b) (Supp. 2019). Appellant subsequently entered a negotiated plea of guilty, and the circuit court filed a sentencing order on November 15, 2017, placing appellant on thirty-six months' probation on all three counts. Appellant signed that he understood the terms and conditions of his probation agreement.

On May 1, 2019, the State filed a petition for revocation of probation alleging that appellant had violated the following conditions of his probation:

1. On or about April 26th, 2019, the Defendant committed the offense of Domestic Battery in the 2nd Degree, Class C Felony, in Benton County, Arkansas.

2. The Defendant has failed to pay fines, fees and costs as ordered by the court.

3. The Defendant has failed to pay supervision fees.

On June 6, 2019, appellant apparently appeared in court on the petition. However, appellant tested positive for THC, and the circuit court held him in contempt of court. The

circuit court ordered that appellant be incarcerated for contempt of court for ten days and appear back for a revocation hearing at a later date.

On October 16, 2019, the State filed an amended petition for revocation of probation alleging the following two additional violations:

4. On or about November 30th, 2018, the defendant tested positive for methamphetamine and THC.

5. On or about June 6th, 2019, the defendant tested positive for THC.

A revocation hearing was held on November 25, 2019.

At the hearing, the parties stipulated to the admission of medical records from Ozark Community Hospital. These documents indicated that appellant had taken his grandson, J.W., to the hospital for a broken arm, and the following statement was noted in the records:

PT PRESENTS TO ED WITH HIS GRANDPA. PT REPORTS TEARFULLY "I RAN TO THE NEIGHBOR'S HOUSE TO CALL MY STEP-DAD BC MY GRANDPA WAS HITTING US WITH A BELT. I WENT HOME TO CHECK ON MY LITTLE BROTHER WHEN MY GRANDPA PUSHED ME DOWN AND HURT MY ARM." "I WAS WORRIED ABOUT MY LITTLE BROTHER," MY GRANDPA SAID "I DIDN'T BREAK YOUR ARM" BUT WHEN HE LOOKED AT IT HE SAID "OH SHIT, LOOK AT WHAT YOU MADE ME DO," PT CRYING AND VISIBLY UPSET.

Detective Braxton Handle testified that he responded to the dispatch after J.W. had been taken to the hospital for a broken arm. Upon arriving at the hospital, Detective Handle spoke with appellant. Detective Handle explained that he was wearing a body camera when he spoke with appellant, and the video from that camera was played for the circuit court. During the video, appellant told Detective Handle that his "grandson got a broken arm. He came in the – – he came in the house and I shoved him right in the house and the front door fell on his arm I guess somehow. It looked like it snapped."

Officer David Guarno, appellant's supervising probation officer, testified appellant had given him "trouble" during the term of his probation by testing positive for controlled substances, failing to maintain his monetary obligations as ordered by the court, and committing a new violent offense. Officer Guarno readily admitted that he was most concerned about the new pending charge for battery in the second degree against appellant and that it "was the main reason for the petition to revoke." He testified that he tested appellant multiple times to determine if appellant was a habitual drug user. Appellant tested positive on November 30, 2018, for methamphetamine and THC and on June 6, 2019, for THC. Officer Guarno further testified that although appellant had not paid his supervision fees in the past as ordered, he had since rectified that issue and was current. Officer Guarno additionally thought that appellant had "paid off" his court fines by the time of the revocation hearing.

Jeff Williams, J.W.'s stepfather, testified that appellant cares for J.W. and the other children in the household nearly every day when he and his wife are working. Mr. Williams further explained that he was aware of and recognized a letter that J.W. had written after the incident, which was subsequently filed with the circuit court. Although trial counsel sought the admission of the letter during Mr. Williams's testimony, the State objected on the basis of hearsay and lack of foundation. Trial counsel argued that it was not being offered for the truth of the matter asserted; however, the circuit court denied the letter's admission into evidence on the basis that there was a lack of foundation. Mr. Williams testified that he did not have any concerns about appellant continuing to watch the children even after the incident because he now knew the "full story." He explained that his understanding was

4

that J.W. was grounded from playing outside. Because J.W. failed to listen and was outside playing, appellant "kind of patted" and "guided" J.W. inside the house when J.W. tripped and fell over the front doorway jamb, causing J.W. to fall down and break his arm. Mr. Williams also acknowledged that he was aware that appellant has "some drug use."

Patricia Williams, J.W.'s mother and appellant's daughter, testified that she did not have any cause or concern about leaving the children in appellant's care. She testified that she recognized J.W.'s handwriting in the same letter previously excluded during Mr. Williams's testimony and that J.W. had asked to write the letter. The State objected on the basis of hearsay to Ms. Williams's testimony that J.W. had mentioned the letter first to Mr. Williams, which the circuit court sustained. The State further objected to the renewed motion to admit the letter J.W. allegedly wrote, which the circuit court ruled should be excluded on the basis of a lack of proper foundation. Trial counsel proffered a copy of this letter for our review on appeal. Upon further examination, Ms. Williams testified that she did not think appellant would intentionally hurt her son and that she was aware of appellant's drug use. She further agreed that appellant was "very honest" but maintained that appellant must have been "usher[ing]" J.W. into the house "in the heat of the moment" when J.W. fell, despite the statements appellant made to Detective Handle.

After all evidence had been presented, appellant's trial counsel orally argued the following:

> Judge, the allegation -- the first allegation that he committed, the offense of battery in the second degree, I don't know that the evidence today presented today rises to battery in the second degree. I think there's been testimony -- the understanding of what happened that day was that [J.W.] broke his arm. Whether or not that was knowingly for purpose of sec -- battery in the second degree for a C felony, I think that's still up in dispute.

> I don't know that that's – there's substantial evidence to find him guilty of violating his probation as far as to count one. His probation officer testified that but for this he would not have filed a probation revocation, so I think *I'm going to ask the Court to hold off any kind of sentencing until we can have a finding of fact on whether or not he is guilty of committing a Class C felony* because I think it does matter if -- if it was reckless or knowingly.
>
> A child was injured that day; however, *I would point out that we haven't had a full trial as to that fact.* And I understand we're here for an evidentiary hearing; however, I think there are minor differences to show whether this case was accidental or knowingly for the purposes of deciding whether or not this is a child abuse case or -- or something that -- just an accident that -- could have been avoided.

(Emphasis added.) Thereafter, the circuit court stated that it was revoking appellant's probation on all five grounds alleged in the amended petition and sentenced appellant to serve a total of twenty-six years' imprisonment. This appeal followed.

Rule 4–3(k)(1) requires that the argument section of a no-merit brief contain "a list of all rulings adverse to the defendant made by the circuit court on all objections . . . with an explanation as to why each . . . is not a meritorious ground for reversal" and that "the abstract and addendum of the brief shall contain . . . all rulings adverse to the defendant." Ark. Sup. Ct. R. 4–3(k)(1). Generally speaking, if a no-merit brief fails to address all the adverse rulings, it will be sent back for rebriefing. *Sartin v. State*, 2010 Ark. 16, at 4, 362 S.W.3d 877, 880. The requirement for abstracting and briefing every adverse ruling ensures that the due-process concerns in *Anders* are met and prevents the unnecessary risk of a deficient *Anders* brief resulting in an incorrect decision on counsel's motion to withdraw. *Sartin*, 2010 Ark. 16, at 8, 362 S.W.3d at 882. For these reasons, a no-merit brief in a criminal case that fails to address an adverse ruling does not satisfy the requirements of Rule 4–3(k)(1), and rebriefing will be required. *Id.*

Our review of the record reveals that although counsel has argued that the circuit court's evidentiary rulings relating to the new second-degree domestic-battery charge did not provide a meritorious ground for reversal because appellant was also found in violation of his probation for testing positive for controlled substances, counsel failed to address other adverse rulings in the argument section of the no-merit brief. For example, counsel failed to specifically list and address the revocation itself as an adverse ruling. A challenge to the sufficiency of the evidence may be raised for the first time in an appeal of a revocation in the absence of a motion for a directed verdict. *See Barbee v. State*, 346 Ark. 185, 56 S.W.3d 370 (2001). Additionally, counsel argues that there was no preserved objection regarding sentencing. However, our review reveals that after the evidence was presented, trial counsel asked the circuit court to "*to hold off any kind of sentencing until we can have a finding of fact on whether or not he is guilty of committing a Class C felony.*" (Emphasis added.) Trial counsel went on to explain that there had not yet been a trial on the pending second-degree domestic-battery charge. Despite this request, the circuit court immediately thereafter found appellant in violation and sentenced him to serve a total of twenty-six years. Yet, counsel does not address the circuit court's denial of trial counsel's request to "hold off" on sentencing until there had been a trial on the pending new charge. Due to these deficiencies, we deny counsel's motion to withdraw and order rebriefing.

Accordingly, we order counsel to cure these deficiencies by filing a substituted brief within fifteen days from the date of this opinion. The deficiencies we have identified should not be considered exhaustive, and counsel is encouraged to review *Anders* and Rule 4–3 regarding the requirements of a no-merit brief. We express no opinion as to whether the

new brief should be a no-merit brief pursuant to Rule 4–3 or a brief on meritorious grounds. If a substituted no-merit brief is filed, our clerk will forward counsel's motion and brief to appellant, and he will have thirty days within which to raise additional pro se points in accordance with Rule 4–3. The State will likewise be given an opportunity to file a responsive brief if further pro se points are made. Appellant and the State may elect to stand on the original pro se points and responsive brief in this case. *See Jester v. State*, 2018 Ark. App. 360, 553 S.W.3d 198.

Rebriefing ordered; motion to withdraw denied without prejudice.

ABRAMSON and MURPHY, JJ., agree.

*Caddell Reynolds, PA*, by: *Josie N. Graves*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.